UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WALTER ZAREMBA, an individual,
NO BOUNDARIES, LLC, a Delaware corporation,
and CASZ, LLC, a Michigan corporation,

    Plaintiffs,

-vs-

GREGORY C. DUTCHER, an individual, OXFORD
INVESTMENT SERVICES, INC., a Maryland
corporation, d/b/a OXFORD INTERNATIONAL,
INC. and 1399551 ONTARIO LIMITED, an Ontario,
Canada corporation, jointly and severally,

    Defendants.

Case No. 02-10003

Hon. DAVID M. LAWSON

_____/

TIMMIS & INMAN PLLC
Michael F. Wais (P45482)
David A. Lawrence (P48630)
Attorneys for Plaintiffs
300 Talon Centre
Detroit, MI 48207
(313) 396-4200

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs Walter Zaremba ("Zaremba"), No Boundaries, LLC ("No Boundaries") and Casz, LLC ("Casz"), through their attorneys Timmis & Inman PLLC, bring this action as follows:

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

## PARTIES AND JURISDICTION

1. No Boundaries is a Delaware corporation, with is principal place of business in Long Beach, California.

2. Zaremba is an individual citizen of the State of Michigan residing in Elmira, within the Eastern District of Michigan, and is the sole and Managing Member of No Boundaries.

3. Casz is a Michigan limited liability company with its principal place of business in Elmira, Michigan.

4. Upon information and belief, Defendant Gregory C. Dutcher ("Dutcher") is an individual citizen of Maryland residing in or near Easton, Maryland.

5. Upon information and belief, Defendant Oxford Investment Services, Inc., d/b/a Oxford International, Inc., is a Maryland corporation with its principal place of business in Easton, Maryland, and conducts business, including the transactions relevant to this action, within the Eastern District of Michigan. Dutcher is the Managing Director of Oxford Investment, Inc. (the corporate Defendants are sometimes collectively referred to as the "Oxford Defendants").

6. Defendant 1399551 Ontario Limited is an Ontario, Canada corporation with its principal place of business located in Ontario, Canada, and conducts business, including the transactions relevant to this action, within the Eastern District of Michigan. Dutcher is affiliated with 1399551 Ontario Limited of Oxford (the corporate Defendants are collectively referred to as the "Oxford Defendants").

7. The material transactions and occurrences giving rise to this cause of action occurred within the Eastern District of Michigan.

#156675v3

2

8. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000).

9. This Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1332.

10. This Court is the proper venue for this cause of action.

## COMMON ALLEGATIONS

11. In January, 2000, Zaremba and Dutcher began to discuss a $7,000,000 loan from Dutcher's Oxford International, with the assistance of the other Oxford Defendants, to provide the operating capital for Zaremba's No Boundaries, which was to acquire the assets of a bankrupt sports equipment manufacturer, marketer and distributor.

12. Dutcher and Oxford International made each of the following representations and/or promises to Zaremba, No Boundaries and Casz:

   (a) That they had the ability, wherewithal and/or financial resources to fund the $7,000,000 loan as agreed;

   (b) That they would make the funding and other arrangements necessary to close the loan in a timely manner;

   (c) That they would make prompt disbursements of loan funds on a to be agreed schedule;

   (d) That they would properly hold all the collateral as pledged for the loan and, accordingly, that they would not exercise on the pledge or sell/transfer the collateral absent No Boundaries' failure to make loan payments; and

   (e) That they would charge only reasonable fees, costs and expenses as necessary for the closing and funding of the loan.

#156675v3

3

13. In reasonable reliance upon these representations, the Zaremba Group, LLC agreed to borrow the $7,000,000 from Oxford International and executed a loan proposal document on May 25, 2000. In September, 2000, No Boundaries, LLC was incorporated and all the various agreements that had been executed by the Zaremba Group, LLC were assigned to the newly formed No Boundaries, LLC (the document are in the possession of Defendants).

14. In further reliance upon the preceding representations and promises, Zaremba paid Oxford International $32,000 in various loan fees in June, 2000.

15. In September, 2000, Zaremba/No Boundaries and Dutcher/Oxford International orally agreed that the collateral for the $7,000,000 loan should include 216,667 fully paid shares of common stock of Eagle Wireless International, Inc. (stock certificate numbers #EW0703 and #EW0626) ("Eagle Stock"), which was then pledged to Dutcher and/or Oxford International as collateral for the loan by Zaremba, through a General Power of Attorney issued to Zaremba by Casz, which is the sole owner of the Eagle Stock.

16. After unreasonable delays and excuses by Dutcher and the Oxford Defendants, the final terms for the loan were agreed upon, including a loan disbursement schedule which provided for the first disbursement of $700,000 to take place immediately following the execution of the loan documents.

17. Finally, on January 29, 2001, the Loan Agreement and related loan documents were executed by Oxford International and No Boundaries, thus requiring that the first loan disbursement of $700,000 by Oxford International to No Boundaries be made immediately. (The documents are in the possession of Defendants).

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

18. On January 30, 2001, Dutcher executed and provided a check to No Boundaries in the amount of $700,000 drawn on the account of Defendant 1399551 Ontario Limited at the Royal Bank of Canada (check number 0022), which bore the note - "initial loan disbursement."

19. However, the check was immediately returned unpaid by No Boundaries' bank as a result of insufficient funds and failed to clear all attempts to honor it. (A copy of the check and related documents are in the possession of Defendants).

20. No Boundaries immediately notified Dutcher and the Oxford Defendants of the bounced check, but the insufficiency was not cured.

21. Immediately thereafter began a ten month discourse of delay and deception in which repeated complaints and demands for the disbursement of the loan funds by Zaremba, No Boundaries and Casz were met with nothing but broken promises and endless excuses from Dutcher and the Oxford Defendants.

22. On June 8, 2001, a mere $9,988 was disbursed by Oxford International to No Boundaries. No further funds from the promised $7,000,000 loan have been disbursed by Oxford International to No Boundaries since that date.

23. Zaremba, No Boundaries and Casz have fulfilled all of their obligations and kept all of their promises with regard to the loan transaction.

## COUNT I – MISREPRESENTATION – FRAUD IN THE INDUCEMENT

24. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 23 as if more fully set forth herein verbatim.

25. In connection with the negotiation and execution of the Loan Agreement, pledge of collateral and related transactions, as described above, Dutcher and Oxford

#156675v3    5

International made the following representations and/or promises to Zaremba, No Boundaries and Casz:

(a) That they had the ability, wherewithal and/or financial resources to fund the $7,000,000 loan as agreed;

(b) That they would make the funding and other arrangements necessary to close the loan in a timely manner;

(c) That they would make prompt disbursements of loan funds on a to be agreed schedule;

(d) That they would properly hold all the collateral as pledged for the loan and, accordingly, that they would not exercise on the pledge or sell/transfer the collateral absent No Boundaries' failure to make loan payments; and

(e) That they would charge only reasonable fees, costs and expenses as necessary for the closing and funding of the loan.

26. In connection with the negotiation and execution of the Loan Agreement, pledge of collateral and related transactions, as described above, Dutcher and the Oxford Defendants had an affirmative duty to disclose to Zaremba, No Boundaries and Casz their difficulty or inability to raise the money necessary to fund the $7,000,000 loan.

27. Nonetheless, Dutcher and the Oxford Defendants remained silent in such regard, omitting any such representations to Zaremba, No Boundaries and Casz.

28. The above representations and omissions were material to Zaremba, No Boundaries and Casz's business decisions concerning the funding for No Boundaries' operations and to their decision to borrow the money from Dutcher and Oxford International.

#156675v3

6

29. Dutcher and Oxford International knew the above representations were false when made and/or made the representations with reckless disregard for the truth.

30. Dutcher and Oxford International made the above promises in bad faith with no intention of keeping or fulfilling such promises.

31. Dutcher and Oxford International intentionally or recklessly remained silent and failed to make the above omitted representations in violation of their duty to disclose such information, which duty especially arose when Dutcher and Oxford International collected fees from No Boundaries in June, 2000.

32. Dutcher and Oxford International intended for Zaremba, No Boundaries and Casz to rely upon their representations, promises and omissions.

33. In reasonable and detrimental reliance upon the above representations, promises and omissions, Zaremba, No Boundaries and Casz did all things required of them, fulfilled all their obligations regarding the loan transaction and executed the Loan Agreement and related documents.

34. In reasonable and detrimental reliance upon the above representations, promises and omissions, Zaremba, No Boundaries and Casz reasonably expected that No Boundaries would receive $7,000,000 in loan funds.

35. However, Dutcher and Oxford International failed to timely close on the loan, failed to provide the $7,000,000, charged and kept unreasonable fees, and sold the Eagle Stock Collateral without authority to do so.

36. As a direct and proximate result of Dutcher and Oxford Defendants' misrepresentation, fraudulent inducement and/or silent fraud, Zaremba, No Boundaries and Casz have suffered the following economic damages: loss of the

Eagle Stock collateral worth $358,338 at the time of sale based on the average market settling price for that period and loss of $32,000.

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Eight Dollars ($390,338), together with costs, interest and attorney fees.

### COUNT II – FRAUD – BAD CHECK

37. Plaintiffs reallege the allegations contained in paragraphs 1 through 36, as if each were fully set forth herein.

38. As part of the loan transaction described above, Dutcher and the Oxford Defendants, on or about January 30, 2001, represented that an initial loan disbursement in the amount of $700,000 had been paid to No Boundaries via check number 0022 drawn on Defendant 1399551 Ontario Limited's account with the Royal Bank of Canada.

39. Dutcher and the Oxford Defendants knew at the time they made the representation to Zaremba, No Boundaries and Casz that the same was false (i.e., that the check was bad, or would not clear), and/or made the representation with reckless disregard for the truth.

40. Dutcher and the Oxford Defendants intended for Zaremba, No Boundaries and Casz to rely upon their representation.

41. Zaremba, No Boundaries and Casz relied upon Dutcher and the Oxford Defendants' representation to their detriment, as the check was returned unpaid by No Boundaries' bank due to insufficient funds.

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

42. As a direct and proximate result of Dutcher and the Oxford Defendants' fraudulent misrepresentation, Zaremba, No Boundaries and Casz have been damaged in the amount of $700,000.

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in an amount in excess of Seven Hundred Thousand Dollars ($700,000) (i.e., the amount of the bad check), together with costs, interest and attorney fees.

### COUNT III – INNOCENT MISREPRESENTATION

43. Plaintiffs reallege the allegations contained in paragraphs 1 through 42, as if each were fully set forth herein.

44. In connection with the negotiation and execution of the Loan Agreement, pledge of collateral and related transactions, as described above, Dutcher and Oxford International made the following representations to Zaremba, No Boundaries and Casz:

    (a) That they had the ability, wherewithal and/or financial resources to fund the $7,000,000 loan as agreed;

    (b) That they would make the funding and other arrangements necessary to close the loan in a timely manner;

    (c) That they would make prompt disbursements of loan funds on a to be agreed schedule;

    (d) That they would properly hold all the collateral as pledged for the loan and, accordingly, that they would not exercise on the pledge or sell/transfer the collateral absent No Boundaries' failure to make loan payments; and

#156675v3                                    9

    (e)    That they would charge only reasonable fees, costs and expenses as necessary for the closing and funding of the loan.

45. In connection with the negotiation and execution of the Loan Agreement, pledge of collateral and related transactions, as described above, Dutcher and the Oxford Defendants had an affirmative duty to disclose to Zaremba, No Boundaries and Casz their difficulty or inability to raise the money necessary to fund the $7,000,000 loan.

46. Nonetheless, Dutcher and the Oxford Defendants remained silent in such regard omitting any such representations to Zaremba, No Boundaries and Casz.

47. The above representations and omissions were material to Zaremba, No Boundaries and Casz's business decisions concerning the funding for No Boundaries' operations and to Zaremba, No Boundaries and Casz's decision to borrow the money from Dutcher and Oxford International.

48. Dutcher and Oxford International knew a the time they made the representations to Zaremba, No Boundaries and Casz that the same were false, made the representations with reckless disregard of the truth, and/or made the representations without knowing the truth or falsity of said representation and should have known.

49. At the time Dutcher and Oxford International failed to make the above omitted representations to Zaremba, No Boundaries and Casz, Dutcher and Oxford International knew or should have known they had a duty to disclose such information.

50. Dutcher and Oxford International intended for Zaremba, No Boundaries and Casz to rely upon their representations and omissions.

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

#156675v3           10

51. In reasonable and detrimental reliance upon the above representations and omissions, Zaremba, No Boundaries and Casz did all things required of them, fulfilled all their obligations regarding the loan transaction and executed the Loan Agreement and related documents.

52. In reasonable and detrimental reliance upon the above representations and omissions, Zaremba, No Boundaries and Casz reasonably expected that No Boundaries would receive $7,000,000 in loan funds.

53. However, Dutcher and Oxford International failed to timely close on the loan, failed to provide the $7,000,000, charged and kept unreasonable fees, and sold the Eagle Stock Collateral.

54. As a direct and proximate result of Dutcher and Oxford Defendants' innocent misrepresentation and/or silent fraud, Zaremba, No Boundaries and Casz have suffered the following economic damages: loss of the Eagle Stock collateral worth $358,334 and loss of $32,000 in loan fees.

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Four Dollars ($390,334), together with costs, interest and attorney fees.

### COUNT IV – CONVERSION

55. Plaintiffs realleges the allegations contained in paragraphs 1 through 54, as if each were fully set forth herein.

56. Zaremba provided and pledged, and Dutcher and Oxford International accepted, the Eagle Stock as collateral for the $7,000,000 loan.

57. As Dutcher and the Oxford Defendants failed to make the $7,000,000 loan, Dutcher and Oxford International wrongfully exerted domain over Casz's personal property (i.e., the Eagle Stock), when they wrongfully executed on the pledge and sold the stock without the consent of Casz, Zaremba or No Boundaries, and now retain the proceeds.

58. Defendants each aided in the concealment and conversion of Plaintiffs' personal property; i.e., the Eagle Stock worth $358,334.

59. Pursuant to MCL §600.2919a, Casz, Zaremba and No Boundaries are entitled to three (3) times the amount of actual damages it has suffered as a result of Defendants' conversion of its personal property, plus costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs pray for Judgment in Plaintiffs' favor in an amount equal to One Million Seventy Five Thousand Two Dollars ($1,075,002), plus costs and reasonable attorney's fees, and such other relief as this Court deems just and equitable.

## COUNT V – PROMISSORY ESTOPPEL

60. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 59 as if more fully set forth herein verbatim.

61. To induce Zaremba, No Boundaries and Casz to enter into the loan transaction, pay loan fees, pledge collateral and execute the Loan Agreement and related documents, Dutcher and Oxford International expressly promised Zaremba, No Boundaries and Casz:

   (a) That they had the ability, wherewithal and/or financial resources to fund the $7,000,000 loan as agreed;

#156675v3

12

(b) That they would make the funding and other arrangements necessary to close the loan in a timely manner;

(c) That they would make prompt disbursements of loan funds on a to be agreed schedule;

(d) That they would properly hold all the collateral as pledged for the loan and, accordingly, that they would not exercise on the pledge or sell/transfer the collateral absent No Boundaries' failure to make loan payments; and

(e) That they would charge only reasonable fees, costs and expenses as necessary for the closing and funding of the loan.

62. Dutcher and Oxford International made such promises with the intent that Zaremba, No Boundaries and Casz would rely upon such promises and undertake the induced actions as described above.

63. Zaremba, No Boundaries and Casz, in fact, reasonably relied upon Dutcher and Oxford International's promises to their detriment in that they undertook the induced actions and fulfilled all of its obligations related to the promised loan transaction.

64. However, Dutcher and Oxford International broke their promises and never made the loan.

65. Dutcher and the Oxford Defendants have reaped the benefits of Zaremba, No Boundaries and Casz's reliance and efforts; i.e., the $32,000 in fees and the Eagle Stock worth $358,334.

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

66. These circumstances require enforcement of Dutcher and Oxford International's promises to loan $7,000,000, and/or the return of the Eagle Stock and the $32,000 in fees.

67. As a direct and proximate result of Zaremba, No Boundaries and Casz's reliance upon Dutcher and Oxford International's broken promises, Plaintiffs have been damaged in the amount of $390,334.

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Four Dollars ($390,334), together with costs, interest and attorney fees.

### COUNT VI – UNJUST ENRICHMENT-QUANTUM MERUIT

68. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 67 as if more fully set forth herein verbatim.

69. As a result of Zaremba, No Boundaries and Casz's full, good-faith compliance with their obligations under the promised loan transaction and Dutcher and the Oxford Defendants' tortious activity, Dutcher and the Oxford Defendants have received or taken $32,000 in unearned loan fees and Eagle Stock worth $358,334 from Zaremba, No Boundaries and Casz.

70. Dutcher and the Oxford Defendants accepted, took or received and will otherwise retain the benefits conferred upon it by Zaremba, No Boundaries and Casz's actions without making the promised loan, much less experiencing the No Boundaries' default required for a proper execution on the Eagle Stock Collateral pledge.

71. Dutcher and the Oxford Defendants' actions and omissions at the expense of Zaremba, No Boundaries and Casz were inequitable and made in bad faith.

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

#156675v3

14

72. As a direct and proximate result of the foregoing, Zaremba, No Boundaries and Casz have been damaged in the amount of $390,334.

73. These circumstances constitute unjust enrichment to Dutcher and the Oxford Defendants such that Zaremba, No Boundaries and Casz must be reimbursed in order to avoid injustice.

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Four Dollars ($390,334), together with costs, interest and attorney fees.

## COUNT VII – CONSPIRACY

74. Plaintiffs restate and reallege paragraphs 1 through 73, as if said paragraphs were set forth in their entirety herein.

75. Defendants illegally, maliciously, tortiously and/or wrongfully conspired with one another with the intent to, and for the purpose of, defrauding Zaremba, No Boundaries and Casz, fraudulently obtaining loan fees, and converting their Eagle Stock collateral.

76. This conspiracy resulted in the illegal, unlawful and tortious activities of fraud, misrepresentation, conversion and unjust enrichment, as described above.

77. As a direct and proximate result of Defendants' conspiracy, Zaremba, No Boundaries and Casz have been damaged in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Four Dollars ($390,334).

WHEREFORE, Plaintiffs hereby pray for a judgment against Defendants in the amount of Three Hundred Ninety Thousand Three Hundred Thirty Four Dollars ($390,334), together with costs, interest and attorney fees.

TIMMIS & INMAN L.L.P.
Attorneys and Counselors at Law
300 Talon Centre
Detroit, Michigan 48207

#156675v3                                   15

## DEMAND FOR TRIAL BY JURY

Plaintiffs, by their attorneys, Timmis & Inman PLLC, hereby demands trial by jury of all issues triable by jury in this matter.

Respectfully submitted,

TIMMIS & INMAN PLLC

By: _____
Michael F. Wais (P45482)
David A. Lawrence (P48630)
**Attorneys for Plaintiffs**
300 Talon Centre
Detroit, MI 48207
(313) 396-4200

Dated: January 3, 2002